IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2019 JAN 29 PM 5:26

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | |
|---|---|
| JAMES P. BURG, § | |
| Reg. No. 35786-298, § | |
| Petitioner, § | |
| § | |
| § | EP-19-CV-24-FM |
| § | |
| SCOTT NICKLIN, Warden, § | |
| Respondent. § | |

## MEMORANDUM OPINION AND ORDER

Petitioner James P. Burg petitions the Court for a writ of mandamus under 28 U.S.C. § 1361 to order Respondent Scott Nicklin to "honor the mandatory provisions of the First Step Act, enacted December 21, 2018." Pet'r's Pet. 1, ECF No. 1-2. Specifically, Burg asks the Court to "order the respondent . . . to immediately release the Petitioner to home detention under the requirements of . . . 34 U.S.C. § 60541." *Id.* at 11. Burg made—and the Court dismissed—a similar request in a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in cause number EP-18-CV-293-FM. After due consideration, the Court will deny Burg's petition for a writ of mandamus because it appears from its face that he is not entitled to relief.

## BACKGROUND

Burg is a 68-year-old male poor health. *Id.* He is serving a 90-month sentence for mail fraud and willfully failing to file a tax return at the La Tuna Federal Correctional Institution in Anthony, Texas.[1] *United States v. Burg*, 1:12-cr-00450-JLK-1 (D. Colo.). His projected release date is June 13, 2019. https://www.bop.gov/inmateloc/ (search for James P. Burg), last visited Jan. 24, 2019.

Burg claims he requires "medical treatment on [his] lower back, right hip, [and] right knee." Pet'r's Pet., Ex. B (Inmate Request to Staff), p. 4, ECF No. 1-3. He avers he asked for

---

[1] Anthony is in El Paso County, Texas, which is within the Western District of Texas. 28 U.S.C. § 124(d)(3) (2012).

home confinement so his wife could arrange for his medical care.

Burg asserts Nicklin, the Warden at the La Tuna Federal Correctional Institution, refuses to comply with the requirements of the First Step Act and release him to home confinement. He argues Nicklin is not complying with the Act's *"requirement* that . . . inmates receive the 'maximum amount of time' in home confinement', up to six (6) months." Pet'r's Pet. 2–3, ECF No. 1-2 (emphasis added).

## APPLICABLE LAW

The Court permitted Burg to proceed in forma pauperis. Consequently, his complaint is subject to screening under 28 U.S.C. § 1915A. Section 1915A reads in pertinent part:

> The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity [and] identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a) and (b) (emphasis added). *See also* 28 U.S.C. § 1915(e)(2)(B) (applicable to all in forma pauperis actions ). A complaint is frivolous, if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The Mandamus Act vests a district court with original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992) (citing 28 U.S.C. § 1361). It "is an extraordinary remedy for extraordinary causes." *In re Corrugated Container Antitrust Litig. v. Mead Corp.*, 614 F.2d 958, 961–62 (5th Cir. 1980) (internal citations and quotations omitted). It is an appropriate remedy only where the respondent

owes a duty "so plainly prescribed as to be free from doubt"—that is, a duty imposed by statute or the Constitution—to perform a specific, nondiscretionary act. *Geddings*, 979 F.2d at 1108. "To obtain a mandamus order, a petitioner must establish '(1) a clear right to the relief, (2) a clear duty by the respondent to do the act requested, and (3) the lack of any other adequate remedy.'" *Davis v. Fechtel*, 150 F.3d 486, 487 (5th Cir. 1998) (quoting *In re Stone*, 118 F.3d 1032, 1034 (5th Cir. 1997)). The issuance of the writ lies within a court's discretion. *Denson*, 603 F.2d at 1146.

## ANALYSIS

The Court notes three statutes govern the *discretion* of the Bureau of Prisons (BOP) to place inmates in particular facilities: 18 U.S.C. § 3621(b) grants the BOP the authority to designate places of confinement; 18 U.S.C. § 3624 (a part of the Second Chance Act of 2007) authorizes the BOP to provide post-imprisonment rehabilitation services in community corrections facilities; and 34 U.S.C. § 60541 (a part of the First Step Act of 2018) permits the BOP to grant prisoners who participate in reentry and skills development programs the maximum allowable period in a community corrections facilities. It also allows the BOP to place elderly prisoners in home confinement.

More specifically, § 3621(b) gives the BOP the authority and *discretion* to designate a prisoner's place of confinement. Under § 3621(b), the BOP:

> may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable.

18 U.S.C. § 3621(b) (2012). In making this determination, the BOP must consider "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the

history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence . . . and (5) any pertinent policy statement issued by the Sentencing Commission[.]" *Id.*

The Second Chance Act directs "a shift from policing those on parole to rehabilitating them," and places on the "parole system . . . an increasing special obligation to help federal offenders successfully reenter into society." *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring). It authorizes funding for drug treatment, job training and placement, educational services, and other services or support needed to rehabilitate prisoners and reduce recidivism. *Id.* The Act also addresses placement in community corrections facilities such as halfway houses. 18 U.S.C. § 3624(c) (2012). It grants the BOP Director the *discretion* to place a prisoner in a community corrections facility for up to twelve months, instead of limiting that time to six months as permitted by the prior law. *Id.* The Act authorizes the Director, "to the extent practicable, . . . to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." *Id.* It also directs the BOP to issue new regulations to ensure that placements in community correctional facilities are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." *Id.* § 3624(c)(6).

The First Step Act focuses on rehabilitation, reintegration, and sentence reduction. It requires the BOP to "provide incentives for prisoner participation in skills development programs." 34 U.S.C. § 60541(a)(1)(G). At the *discretion* of the BOP, such incentives may include "the maximum allowable period in a community confinement facility" and, other than a reduction in the prisoner's term of imprisonment, "such other incentives" as are considered

appropriate. *Id.* § 60541(a)(2). It also potentially expands the release opportunities available to elderly prisoners:

> The Attorney General shall conduct a pilot program to determine the effectiveness of removing eligible elderly offenders from a Bureau of Prisons facility and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced.
>
> . . . .
>
> In carrying out a pilot program . . . the Attorney General may release some or all eligible elderly offenders from the Bureau of Prisons facility to home detention.

*Id.* § 60541(g)(1).

The Supreme Court has consistently held that a prisoner has no constitutional right to be confined in a particular place. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.").

The Attorney General—and by delegation the BOP—has exclusive authority and *discretion* to designate the place of an inmate's confinement. *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971). "[A]ny approach that puts the judicial branch in charge of designating the place of confinement for a federal prisoner—no matter how well justified on utilitarian grounds—collides with 18 U.S.C. § 4082(b), which gives the Attorney General unfettered discretion to decide where

to house federal prisoners." *In re Gee*, 815 F.2d 41, 42 (7th Cir. 1987).[2]

Moreover, a petitioner complaining about a BOP assignment is not entitled to judicial relief for an alleged "violation of his Fifth Amendment right to due process because 'the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest.'" *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004) (quoting *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981))); *accord Nativi–Gomez v. Ashcroft*, 344 F.3d 805, 808 (8th Cir. 2003); *see also Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003) ("Since discretionary relief is a privilege ..., denial of such relief cannot violate a substantive interest protected by the Due Process clause."); *cf. Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[A] statute which 'provides no more than a mere hope that the benefit will be obtained ... is not protected by due process.'") (alteration in original) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11 (1979)).

After reviewing Burg's petition and the applicable statutes, the Court finds that Nicklin has the *discretion* to determine if and when to assign Burg to home confinement. Nicklin does not owe Burg a duty—imposed by statute or the Constitution—to perform a specific, nondiscretionary act regarding Berg's placement in home confinement. In other words, Berg cannot meet his burden of establishing a clear duty by Nicklin to do the act requested—or a clear right to the relief he seeks.

## CONCLUSIONS AND ORDERS

Accordingly, the Court finds that Burg has no constitutional or statutory right to placement

---

[2] The statutory language in 18 U.S.C. § 4082(b) was re-codified through Pub. L. 94-473, Title 2 II, § 212(a)(2), Oct. 12, 1984, and is currently found at 18 U.S.C. § 3621(b).

in home confinement. The Court concludes, therefore, that it appears from the face of his petition and other pleadings that his petition is frivolous and he is not entitled to a writ of mandamus. The Court, therefore, enters the following orders:

**IT IS ORDERED** that Petitioner James P. Burg's "Petition for a Writ of Mandamus" (ECF No. 1-2) is **DENIED** and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SO ORDERED.**

SIGNED this 29 day of January 2019.

_____
**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**